IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TARIQ BASHIR,

          Plaintiff,

vs.                                          No. CIV 03-349 MV/LFG

RON LYTLE and ART MURPHY,

          Defendants.

**MAGISTRATE JUDGE'S ANALYSIS
AND RECOMMENDED DISPOSITION**[1]

**Introduction**

This is a *pro se, informa pauperis* civil rights action brought under 42 U.S.C. § 1983 by Plaintiff Tariq Bashir ("Bashir"). Bashir is currently incarcerated at the Central New Mexico Correctional Facility ("CNMCF") in its Central Minimum Restrict Unit ("CMRU") in Los Lunas, New Mexico. His Civil Rights Complaint [Doc. 1], filed March 19, 2003, was initially brought on behalf of Bashir and others similarly situated against Defendants John Shanks, Ron Lytle, Art Murphy, and Addus Medical Services. Subsequently, the Court dismissed Shanks and Addus Medical Services from the lawsuit. [Doc. 5, 16.] In addition, Bashir's claims brought on behalf of others were dismissed. [Doc. 5.] The Complaint alleges that Bashir is 100% disabled and confined to a

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

wheelchair. He claims that Defendants denied him certain protections to which he is entitled under the Americans with Disabilities Act ("ADA") and that his living conditions and denial of medical treatment constitute violations of his Eighth Amendment right to be free from cruel and unusual punishment. Bashir seeks certain injunctive relief and an award of $20 million dollars.

More specifically, Bashir alleges that Defendants failed to provide handicapped accessible doors in the facility, showers and bathrooms suitable for a paraplegic, an adequate diet suitable for his condition, medical staff knowledgeable about caring for a paraplegic, jobs suitable for a paraplegic to perform and physical therapy more often than once a week. He also asserts that he is forced to live in quarters that are too small for a paraplegic and that he is not protected from other inmates. [Doc. 1.] Bashir further alleges that these failures by Defendants cause him to live in fear and constant pain. His Complaint asserts that he exhausted all administrative remedies; however, he attached no grievances or other types of administrative complaints to his pleading.

This matter comes before the Court on Defendant Lytle's and Murphy's Martinez Report and Memorandum in Support of Corrections Department Defendants Motion to Dismiss or in the Alternative Motion for Summary Judgment, filed December 15, 2003. [Doc. 19.] Bashir neither filed a response to Defendants' Motion nor a responsive pleading to the Martinez Report. Defendants argue that Bashir failed to exhaust his administrative remedies with respect to all of Bashir's claims and further deny all claims asserted by Bashir.

The Court's Order directing submission of the Martinez Report [doc. 17] explained that the Martinez Report could be used for summary judgment purposes but that Bashir would be given an opportunity to respond to the report and to provide conflicting evidence, should any exist. The parties were further advised that the Martinez Report could be used in deciding whether to grant

summary judgment on Bashir's claims and that all parties should submit whatever evidence might be relevant. Bashir was given 30 days in which to respond to the report, but as of March 31, 2004 no response was filed.

In the Order directing submission of the Martinez Report, the Court directed Defendants to provide all documentation pertinent to Bashir's allegations. Defendants provided hundreds of pages of policies, photos and medical records in response to the Order. In deciding this matter, the Court considered all of the pleadings and attachments, including Bashir's Complaint (containing no exhibits or attachments) and Defendant's Martinez Report along with all the exhibits.

## Factual Background

The following facts are undisputed by Bashir. All inmates sentenced to be incarcerated in the New Mexico Corrections Department go through an intake process consisting of a 60-day period in the diagnostic and reception center of CNMCF. Inmates are evaluated and diagnosed mentally and physically at this time by physicians, psychologists, educators and social workers. They are then classified as to security level, placed in programs and sent to various prisons. Based on information in the medical records, it appears that Bashir was convicted of involuntary manslaughter, assault on a police officer and sentenced to 5.5 years. On August 30, 2002, Bashir, who is confined to a wheelchair, entered the penal system and on September 30, 2002, his evaluation period was completed. On October 1, 2002, he was placed at the CMRU which is one of several prison settings within CNMCF.

### A. *ADA Compliance*

Bashir claims that CMRU is not in compliance with requirements of the ADA, but provides no evidence in support of his position. In contrast, Defendants submitted ADA policies and the

Corrections Department Policy Patient Rights and Responsibilities that are in effect at CMRU. [Doc. 19, Ex. 1, 2.] In addition, Defendants provided affidavit statements by John Harris, Fire Safety and Sanitation Specialist for the Corrections Department, Jackie Leyba, a Sergeant for the Corrections Department who works at CMRU and Defendant Lytle, who is the Warden at CNMCF.

These individuals provided uncontroverted evidence that all of the doorways used by Bashir are wheelchair accessible. The bathroom stool is wheelchair accessible with a five foot turning radius which makes it ADA compliant. The showers with handrails and the shower seat meet ADA specifications. In addition, his quarters, including his assignment to a lower bunk bed, are ADA compliant, the water fountain is at a height he can access, the doors to his dormitory and bathroom area are not locked during day or night, and the bathroom is always open and available to him. [John Harris Aff., Ex. 3.]

Sgt. Leyba provided unchallenged testimony that Bashir has an inmate assistant, paid by the facility, who helps him with his needs. The assistant is normally with Bashir at all times, including at meal times and with respect to his medical department/pharmacy needs. Doorways that Bashir accesses are between 36 and 60 inches wide in contrast to his 27 inch wide wheelchair. Sgt. Leyba also submitted a number of photos of Bashir's living spaces and doorways, all of which appear to demonstrate that the areas Bashir uses are wheelchair accessible. [Leyba Aff., Ex. 5; photos, Ex. 5.1, *et seq.*]

Warden Lytle testified that CMRU, where Bashir is housed, was designed to be ADA compliant and that to his knowledge Bashir filed only three grievances, none of which concern the issues presented by Bashir's complaint. Lytle also stated that the corrections officers and he undergo regular training regarding ADA requirements. According to Lytle, Bashir was placed at CMRU

because of his physical difficulties and he was not placed in a cell or locked housing unit. None of the CMRU inmates have a pattern of bad behavior and Bashir is not known to have enemies at CMRU. Bashir has not been assaulted while at CMRU. Prior to having CMRU, disabled inmates were dispersed to all correctional facilities where their needs were not always adequately met. However, at CMRU, staff and therapists are trained to meet the special needs of inmates like Bashir. [Lytle Aff., Ex. 4.]

Defendant Art Murphy, a former Deputy Warden at CMRU provided affidavit testimony that because of Bashir's disability he was assigned to the lower bunk in a two-person cubicle. He has adequate turning space for his wheelchair and a desk that he can access with his wheelchair. There are no hindrances to the doorways which are all flat. The shower is handicapped-accessible with handles at the right height for wheelchair users and a seat to which Bashir can transfer for bathing. The toilet also is handicapped accessible. The Corrections Department provides Bashir with an inmate assistant who is paid by the Department. In addition, there are several tables in the dining room designed to be used with wheelchairs. Finally, Murphy testified that when Bashir complained to him about the therapy he was receiving, Murphy reported the complaints to the medical staff (the Defendant medical provider in this case was dismissed after Bashir failed to respond to its Motion to Dismiss). [Murphy Aff., Ex. 6.]

### B.  *Medical Treatment*

Bashir claims that he is not receiving the proper medical treatment for his condition. It appears that Bashir suffered a gun shot wound in about 1998-2000 that led to his paraplegia. He has been diagnosed with spastic paralysis of the back secondary paraplegia, secondary to a gun shot wound to the back. He suffers from back spasms and pain, and pain to his shoulder and neck areas.

Prior to his incarceration, Bashir apparently was treated at University of New Mexico Hospital in relation to the initial injury. A regimen of medications was developed to help him control the pain. UH personnel wrote a letter to whom it may concern, addressing his special needs, including exercise, diet and medication needs.

The medical records are numerous. It appears that Bashir was or is regularly seen by medical care providers, including licensed physicians, at CMRU. Sometimes he is seen almost every day; other times, he may be seen more on a weekly basis. There are numerous records documenting the dispersal of his medications, including Valium and Darvocet for the pain and spasms.

During one period, Bashir was demanding massage and more physical therapy. However, one record notes that Bashir received physical therapy from September 29, 2002 to April 23, 2003 with little change or relief. Another records indicates that the physical therapist did not think therapy would benefit him. Bashir also wrote a letter to the warden in April 2003 stating that the physical therapist had told him she had exhausted all her training in trying to relieve his pain. Warden Murphy forwarded Bashir's note to CMRU and asked medical personnel to speak to him regarding Bashir's condition.

According to the undisputed medical records, Bashir regularly received medications and medical care. He also received a number of trigger point injections, massage, physical therapy and some appointments to outside specialists. He was issued an egg-crate mattress, electric blanket, Tens unit, back brace, rubber bath mat, back cushion, two handballs, and air mattress.

    C.    *<u>Diet</u>*

Bashir alleges that he has not been provided a proper diet, and yet he has not supplied any evidence to show what type of diet he needs or has been provided by CMRU in this regard. A review

of Bashir's medical records did not reveal that a physician placed Bashir on any type of special medical diet, or that such a diet is required because of his condition. The University Hospital case manager, however, stated that he should be on a high fiber diet to prevent a bowel blockage. Yet, it is unclear what type of diet he is maintaining. Bashir does not eat pork for religious reasons. One medical record, dated November 4, 2003, notes that Bashir had not eaten, drunk anything, or taken his medications for a certain period of time because he was fasting for Ramadan. Medical care providers encouraged him to eat, drink and take his medications. The only other references to food or drink are that Bashir was given cranberry juice on occasion, and prescribed Metamucil and protein drinks.

### D.  *Employment*

Bashir claims that he is not able to work at positions suitable for a paraplegic. The undisputed evidence is that Bashir has held a position since he arrived at CMRU. He was recently give the job of recreation porter which entails working as a bookkeeper for the recreation specialist. His last position was as an educational technician but he lost that job because he did not show up for a month of work. Bashir also worked as a porter cleaning windows and walls. He had requested a certain shift and was granted that request. [Sandy Hathaway Aff., Ex. 9.]

### E.  *Grievances*

Defendant Lytle provided affidavit testimony that Bashir had filed three grievances. However, James Lechalk, the grievance officer at CNMCF, could find only two grievances for Bashir. The January 11, 2003 grievance concerned pain medications and the April 29, 2003 grievance concerned Bashir's request for medical parole. Lechalk testified that Bashir had not filed any ADA related grievances regarding the facility, his diet, physical therapy, employment or qualifications for medical

7

personnel. In addition, he did not file any complaints regarding perceived threats or assaults against him. [Lechalk Aff., Ex. 12; grievances; Exs. 10, 11.] As stated previously, Bashir submitted a letter to the warden voicing his desire to see a specialist and explaining that the physical therapist did not believe she could do anything further to resolve his pain.

## Analysis

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act ("PLRA") directs that "[n]o action shall be brought with respect to prison conditions" until the prisoner had exhausted his available administrative remedies. 42 U.S.C. § 1997e(a). The United States Supreme Court had held that this provision of the PLRA makes exhaustion "mandatory" for all "inmate suits about prison life." Porter v. Nussle, 534 U.S. 516, 524 (2002).

The Tenth Circuit also recently discussed and clarified the PLRA's exhaustion requirement. Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1207 (10th Cir. 2003).

> The administrative review by correction officials is intended 'to reduce the quantity and improve the quality of prisoner suits.' It should correct problems in meritorious cases, 'filter out some frivolous claims,' and, in any event, facilitate adjudication by 'clarif[ying] the contours of the controversy.'
>
> Under the plain statutory language and the Supreme Court case law, the substantive meaning of § 1997e(a) is clear: "[R]esort to a prison grievance process must precede resort to a court . . . ."

Id. (internal citations omitted). Section 1997e(a) "gives prisons and their officials a valuable entitlement – the right *not* to face a decision on the merits. Defendants with a colorable argument based on lack of exhaustion . . . may raise it in a dispositive motion, to be addressed promptly by the Court." Id. at 1211-12 (internal citations omitted).

8

In Steele, the Tenth Circuit determined whether exhaustion was an essential allegation of a prisoner's claim or whether it was a defendant's affirmative defense that could be waived. The Court held that the petitioner, not the defendant, must bear the burden of affirmatively raising exhaustion. Id. at 1209-10. In other words, a complaint "that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted." Id. at 1210 (internal citation omitted).

> A prisoner must: (1) plead his claims with "a short and plain statement . . . showing that [he] is entitled to relief," in compliance with Fed.R.Civ.P. 8(a)(2), and (2) "attach[] a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome."

Id. at 1210 (internal citations omitted).

In many instances, a Rule 12(b)(6) motion to dismiss[2] will be the proper mechanism for arguing dismissal based on failure to exhaust. Id. at 1212. In deciding such a motion, the Court may consider attached administrative materials, along with the complaint, or administrative documents supplied by the defendant on its motion. Id. If other factual issues must be considered, the court will convert the motion to one for summary judgment. Id.

Here, Defendants supplied the written policy regarding inmate grievances. [Doc. 19, Ex. 14.] The policy was issued and effective in 1990 and was in place during the period of Bashir's incarceration. According to the terms of the policy, a written copy and an oral summary are provided to each inmate during orientation. In order to submit a written grievance it must be filed using a certain form entitled Inmate Grievance Form and submitted to the Grievance Officer. [Ex. 14.] The

---

[2] If the motion is submitted after defendant filed an answer, then the motion should be treated as a motion for judgment on the pleadings. Id. at 1212 n. 4.

9

grievance policy explains that exhaustion of administrative remedies includes the completion of the grievance process through the Department level appeal. [Ex. 14, p. 2, ¶ C.]

Defendants argue that Bashir failed to exhaust his administrative remedies as to any of the claims he now brings in this § 1983 action and that, therefore, his complaint should be dismissed. The Court agrees. Bashir's claims of ADA violations (including complaints of access, diet, providers with adequate knowledge of his condition, employment opportunities and living space) were not raised in either of the two grievances produced by Defendants.[3] [Ex. 10, 11.] Those grievances concerned issues of pain medication and Bashir's request for medical parole. Moreover, even if the grievances could be read to assert ADA claims, which they cannot, Bashir did not appeal the decisions of the Warden. Bashir, while stating summarily in his initial Complaint that his claims were exhausted, provided no proof that he exhausted his claims, nor any argument as to why he might have been precluded from exhausting his administrative remedies. Because the ADA claims were not administratively exhausted, they must be dismissed. Dismissal of the complaint is mandatory when a prisoner fails to exhaust his administrative remedies before filing a civil rights lawsuit in federal court. 42 U.S.C. 1997e(a); Booth v. Churner, 532 U.S. 731, 736-37 (2001); Steele, 355 F.3d at 1211.

In addition, even if Bashir had been able to demonstrate that he exhausted his administrative remedies with respect to the ADA claims, they would fail on the merits. Bashir has produced an absolute lack of evidence as to any possible ADA violations. In contrast, Defendants' evidence of its compliance with ADA requirements is uncontroverted by Bashir.

---

[3]Even if his letter to the Warden might be considered a "grievance," the letter fails to articulate any ADA concerns or alleged violations.

Bashir's Eighth Amendment claims meet a similar fate. Bashir asserts that he was subjected to cruel and unusual treatment apparently because he is forced to live in fear from purported threats from other inmates and/or because of lack of adequate medical treatment. Again, the grievances that were supplied do not complain of any type of threat made by another inmate. The one grievance discusses Bashir's rather vague complaints that he was not receiving proper pain medication, and yet that grievance simply fails to amount to a complaint that Bashir was subjected to cruel and unusual treatment based on a general lack of medical treatment. The letter to the warden discusses Bashir's desire to see a specialist and for more physical therapy.

Even if this Court were to consider the claim exhausted (e.g., had Bashir appealed the adverse grievance decision, or if the letter constituted a grievance), the claim would fail at the summary judgment stage.[4] Defendants have provided ample, uncontroverted evidence that Bashir was treated regularly for his complaints of pain with pain medication, and that he received regular and consistent medical care, including medical testing and consultations with physicians and specialists. The fact that Bashir might have disagreed with the pain medications that he was being given or the treatment he received does not amount to proof of a constitutional deprivation. "[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." Estelle v. Gamble, 429 U.S. 97, 107 (1976); Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 811 (10th Cir. 1999).

---

[4] More than likely, Bashir's Eighth Amendment claims fail to state a claim because he simply has not "allege[d] acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106.

**Conclusion**

Because Bashir failed to exhaust his administrative remedies, the Court concludes that dismissal of Bashir's § 1983 Complaint should be recommended. The Court recommends that the dismissal be without prejudice as the failure to exhaust administrative remedies is often "a temporary, curable, procedural flaw." Steele, 355 F.3d at 1213. However, the Court makes no determination as to whether the time permitted for pursuing administrative remedies may have passed for Bashir.

**Recommended Disposition**

That Defendants' request for dismissal [doc. 19] be GRANTED and that this matter be dismissed without prejudice.

Lorenzo F. Garcia
Chief United States Magistrate Judge